## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARIA DEL CARMEN CARDOSO BELTRAN,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT M. ANDERSON TRUST,<br><br>Defendant. | Civil No. 14-3470 (JRT/BRT)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Luke Grundman and James H. Clark III, **MID-MINNESOTA LEGAL AID**, 430 First Avenue North, Suite 300, Minneapolis, MN 55401, for plaintiff.

Kenneth Hertz, **HERTZ LAW OFFICES, PA,** 3853 Central Avenue N.E., Columbia Heights, MN 55421, for defendant.

Plaintiff Maria Del Carmen Cardoso Beltran brought this action against Defendant Robert M. Anderson Trust (the "Trust") alleging that the Trust violated the Truth in Lending Act ("TILA") and the Minnesota contract-for-deed statute by failing to make certain disclosures when entering into a contract for deed with Beltran. The Trust has moved for summary judgment, arguing that Beltran cannot bring this action because she elected the remedy of contract rescission. The Trust also argues that it did not need to provide the disclosures because the Trust does not "regularly extend" credit under TILA and was not a "multiple seller" under Minnesota law. Because the Court finds that questions of material fact remain, the Court will deny the Trust's motion for summary judgment.

## BACKGROUND

Between 2010 and 2012, Robert Anderson – the sole trustee of the Trust – purchased and resold multiple properties in foreclosure.  (Aff. of Robert Anderson ("Anderson Aff.") ¶¶ 3, 5, Nov. 9, 2015, Docket No. 45.)  He placed some, but not all, of the properties into the Trust on advice of counsel.  (*Id.* ¶ 4.)  On September 20, 2013, the Trust entered into a contract for deed on one of those properties with Beltran.  (*See* Compl., Ex. 2, Sept. 17, 2014, Docket No. 1.)  Anderson's son wrote Beltran's contract, but Anderson signed the contract as "owner/trustee" of the Trust.  (*Id.* at 6; Aff. of James Clark ("Clark Aff."), Ex. F at 18:21-19:3, Oct. 26, 2015, Docket No. 43.)  The purchase price was $99,900 with $5,000 up front and financed at 7.5%.  (Compl., Ex. 2 at 2.)  The loan was "amortized for 10 years" but would "balloon[] in 5 [years]."  (*Id.*)  Beltran's monthly payment would be $1,380.11, but could fluctuate depending on taxes and insurance.  (*Id.*)

According to Beltran, she later discovered that the home was in poor condition, including a "leaky roof, a bathroom that did not work, a chimney that was falling apart, missing insulation, and hazardous electrical conditions throughout the house."  (Aff. of Maria Del Carmen Cardoso Beltran ("Beltran Aff.") ¶ 3, Oct. 26, 2015, Docket No. 42.)  She contends that if she had known about the poor condition, she would not have purchased the house, and that if she was notified that she should get the home inspected, she would have done so.  (*Id.* ¶¶ 4-5.)  She also stated if she "had been notified that [she] should talk to an attorney before signing the contract, [she] would have done so,"

particularly because a legal aid attorney was representing her in another matter at the time. (*Id.* ¶ 8.)

On June 24, 2014, Beltran wrote to Anderson requesting to cancel her contract based on her "right to rescind and cancel on the basis of misrepresentation and material breach of contract." (Second Aff. of Kenneth Hertz ("Second Hertz Aff."), Ex. H at 12, Oct. 5, 2015, Docket No. 36.) She requested the return of her down payment and all monthly payments, amounting to $16,040.88, at which point she would "execute a quitclaim deed and return possession of the home to [Anderson]." (*Id.*)

The Trust responded by serving Beltran with a notice of cancellation of her contract for deed on July 11, 2014. (Second Hertz Aff., Ex. I at 13-18.) In the notice, the Trust stated that Beltran was in default on her contract for deed, and that unless she paid two months of rent and two late fees, totaling $2,860.22, her contract would be terminated. (*Id.* at 15.) On September 17, 2014, Beltran brought the instant action. (Compl.) On November 3, 2014, the Trust filed the termination with the court, stating that it had received no response and Beltran had put forth no defense within 60 days of the notice. (Second Hertz Aff., Ex. I at 13-14.)

Beltran brings two claims against the Trust: failure to provide Beltran with disclosures in violation of the TILA, 15 U.S.C. § 1638, and failure to satisfy the notice requirement of the Minnesota contract-for-deed statute, Minn. Stat. § 559.202. (Compl. at 10-11.) Beltran requests actual damages, statutory damages, and attorney fees under the TILA, *see* 15 U.S.C. § 1640(a). (*Id.* at 12-13.) Beltran also requests the greater of actual damages or statutory damages, as well as attorney fees under Minn. Stat.

§ 559.202, subd. 5. (*Id.*) Finally, Beltran requests any other relief the Court deems appropriate. (*Id.*)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. ELECTION OF REMEDIES

First, the Trust argues that by attempting to rescind her contract, Beltran elected the remedy of cancellation, and therefore, she cannot pursue any causes of action or additional remedies based on the contract. Once a contract is statutorily cancelled, "all rights between the parties under a contract for deed are terminated." *In re Butler*, 552 N.W.2d 226, 230 (Minn. 1996). The election of remedies doctrine "prevent[s] the claimant from collecting twice for a single misdeed against it," such as "where the party has but one cause of action, one right infringed, one wrong to be redressed." *Popp*

*Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 934 (8th Cir. 2000). However, the doctrine does not apply "where a party 'has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs.'" *Id.* (quoting *Geo. A. Hormel Co. v. First Nat'l Bank*, 212 N.W. 738, 740 (Minn. 1927)).

Here, Beltran's claims are not barred under the election of remedies doctrine because they are not based on her rights under the contract for deed. While liability under the TILA and Minn. Stat. § 559.202 is based on the contract transaction,[1] the Trust has not shown that liability based on the contract **transaction**, as opposed to liability based on rights established in the contract, is also barred once a contract is rescinded. Additionally, contract cancellation for breach of contract and claims for failure to provide disclosures under the TILA and the Minnesota contract-for-deed statute provide different remedies for distinct rights.

The Trust contends that Beltran's current claims and the rescission of her contract redress the same wrong because her letter stated that the Trust "violate[d] the Truth in Lending Act and Minnesota disclosure laws." (Second Hertz Aff., Ex. H at 12.) However, while the letter notified the Trust of the alleged TILA and state statutory violations, Beltran did not attempt to exercise her rights under those statutes; in fact, neither statute offers cancellation as a remedy. *See* 15 U.S.C. § 1640(a) (describing

---

[1] Under Minnesota contract-for-deed statute, only a "purchaser" can sue, Minn. Stat. § 559.202, subd. 5(a), and a "purchaser" is defined as "a natural person who enters into a contract for deed to purchase residential real property," *id.* § 559.201, subd. 7. Therefore, the Trust argues that Beltran cannot be a "purchaser" because her contract has been extinguished. Similarly, under the TILA, recovery is based on a "consumer credit transaction," 15 U.S.C. § 1638(a), which is "an act between the parties which alters their legal relationship," *In re Athens/Alpha Gas Corp.*, 332 B.R. 578, 580 (8th Cir. BAP 2005).

remedies for TILA violation); Minn. Stat. § 559.202, subd. 5 (describing remedies for failure to timely deliver notices).  In the letter itself, Beltran stated that she was "exercis[ing] her right to rescind and cancel on the basis of misrepresentation and material breach of contract," and not as a remedy for TILA or state violations.  (Second Hertz Aff., Ex. H at 12.)

The Court accordingly finds that while Beltran's TILA and state law claims are based on the contract-for-deed transaction, they are not based on rights or responsibilities established by the contract.  Therefore, her attempt to rescind the contract does not bar her claims.

## III.    TILA AND CONTRACT-FOR-DEED STATUTE

The Trust concedes that it did not provide Beltran with disclosures under the TILA or the Minnesota contract-for-deed statute; however, the Trust argues that such disclosures were not required because neither statute applies to the Trust.

For the TILA to apply, the Trust must have been a "creditor," 15 U.S.C. § 1638(a), which the TILA defines as

> a person who both (1) **regularly extends**, whether in connection with loans, sales of property or services, or otherwise, **consumer credit** which is payable by agreement in more than four installments or for which the payment or a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable.

15 U.S.C. § 1602(g) (emphasis added).  Regulations further clarify this definition, providing that "[a] person regularly extends consumer credit only if it extended credit . . . more than 25 times (or **more than 5 times** for transactions secured by a dwelling) **in the**

**preceding calendar year**" or, in "**the current calendar year**." 12 C.F.R. § 226.2(a)(17)(v) (emphasis added).

The Minnesota contract-for-deed statute requires certain disclosures if the transaction involved a "multiple seller." Minn. Stat. § 559.202, subd. 1(a). The statute defines a "multiple seller" as "a person that has acted as a seller in four or more contracts for deed involving residential real property during the 12-month period that precedes" the contract date. *Id.* § 559.201, subd. 4.

The Trust executed Beltran's contract for deed in 2013. Therefore, it is a creditor subject to the TILA requirements if it sold more than five homes by contract for deed in either the prior calendar year, 2012, or the current calendar year, 2013. According to the Trust's supplemental answers to interrogatories, it entered into three contracts for deed in 2012, and Anderson personally entered into two contracts for deed in 2012. (Second Hertz Aff., Ex. G at 11.) The Trust also reported entering into three contracts for deed in 2013. (*Id.*) However, Beltran provided the Court with two additional 2012 contracts for deed, not reported in the Trust's interrogatories, one entered into by the Trust and the other entered into by Anderson. (Clark Aff., Exs. A, B.) Accordingly, there is evidence of at least four contracts for deed in 2012 for the Trust, and three contracts for deed in 2012 for Anderson.

With regard to the state contract-for-deed statute, Beltran entered into her contract on September 20, 2013, and thus, for the statute to apply, the Trust must have entered into four or more contracts for deed between September 20, 2012, and September 20,

2013. Based on the evidence provided, the Trust entered into at least two contracts for deed during that time period. (Clark Aff., Exs. A, C; Second Hertz Aff., Ex. G at 11.)

Accordingly, Beltran has not yet conclusively shown that the Trust itself entered into the required number of agreements during the pertinent time period. Beltran asks the Court to combine the Trust's sales and Anderson's sales together to reach the minimum amount of contracts. This case raises substantial questions about whether in circumstances such as these, the Court can question sales technically entered into by separate legal entities, but to the benefit of the same party, and potentially structured to avoid consumer protection statutes – whether there is a mechanism within these statutes to accommodate such transactions. However, the Court need not explicitly decide whether the Court may look beyond the Trust's transactions to Anderson's transactions at this stage because questions of fact remain over whether the Trust engaged in sufficient transactions for the TILA and Minnesota's contract-for-deed statute to apply.

First, Anderson's son stated that the Trust sold four contracts for deed in 2013 "[a]ccording to [their] search," (Clark Aff., Ex. F at 51:24-52:8); however, the Trust's supplemental answer to Beltran's interrogatories only report three sales in 2013. (Second Hertz Aff., Ex. G at 11.) Second, Beltran suggests that an additional property, 3023 Morgan Avenue North, may have been the subject of a contract for deed. The property was sold through a contract for deed in 2010, and the Trust served a notice of cancellation on January 18, 2013. (*See* Clark Aff., Exs. D, E.) Anderson admitted at his deposition that the party to the prior contract for deed no longer lived there, but could not answer when she moved out or who moved in. (*Id.*, Ex. G at 82:3-83:19.) Third, neither

Anderson nor his son could provide a definite answer as to how many contracts for deed the trust sold in 2012. (*See* Clark Aff., Ex. F at 45:10-51:18; *id.*, Ex. G at 27:10-28:24 (Anderson stating that the Trust sold three or four contracts for deed in 2012, but also stating he did not know how many were sold, and that no one involved with the Trust would know how many were sold).) Finally, the discrepancy between the Trust's self-reported number of transactions and the evidence of additional transactions suggests that the Trust may have entered into additional unreported transactions. The Trust, as the party moving for summary judgment, has not satisfied its burden of showing that no question of material fact remains as to the number of transactions the Trust entered into during the requisite time periods. For this reason, the Court will deny the Trust's motion for summary judgment.[2]

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Trust's Motion for Summary Judgment [Docket No. 34] is **DENIED**.

DATED:  September 28, 2016                              s/ John R. Tunheim
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                                       Chief Judge
                                                           United States District Court

---

[2] The Trust also argues that Beltran's damages request is unsupported by law, arguing generally that they are not the type of damages envisioned by the TILA and Minnesota law. However, both the TILA and the Minnesota contract-for-deed statute allow for actual damages and statutory penalties. *See* 15 U.S.C. § 1640(a); Minn. Stat. § 559.202, subd. 5. Thus, the Trust has not shown any reason or basis to limit Beltran's damages at this stage of the litigation.